UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DORON TUCKER #13609-509,

        Petitioner,

v.                                                      Civil Action No. 2:25-cv-567

J. BIENEMY, WARDEN
FCC PETERSBURG,

        Respondent.

### AMENDED[1] OPINION AND ORDER

Petitioner, Doron Tucker ("Petitioner" or "Tucker"), a federal inmate at the Federal Correctional Institution in Petersburg, Virginia, challenges his loss of good time credit, pursuant to 28 U.S.C. § 2241. Pet. (ECF No. 1). Tucker was disallowed 82 days of good conduct time and forfeited 81 days of non-vested good conduct time following proceedings on Incident Report No. 3935488, after Bureau of Prisons ("BOP") officials found he committed three disciplinary infractions. Id. ¶ 15 (ECF No. 1, at 15); Mem. Supp. Resp't's Mot. Dismiss & Summ. J. ("Resp't's Mem.") Ex. 1 ("Benimana Decl."), Attach. 8 (ECF No. 13-1, at 25). Tucker seeks to have his Incident Report expunged and his good time credit restored. Pet'r's Mem. Supp. Writ Habeas Corpus ("Pet'r's Mem.") (ECF No. 9, at 1). Respondent moved for summary judgment on Tucker's claims.[2] Resp't's Mot. Dismiss & Summ. J. (ECF No. 12). Because BOP afforded Tucker due process required under federal law, the Court GRANTS Respondent's motion for summary judgment and the Petition is DISMISSED.

---

[1] This Opinion and Order is amended only to incorporate the appeal paragraph on page 12.

[2] Although Respondent's motion is titled "Motion to Dismiss and for Summary Judgment," Respondent only moves for summary judgment within the motion and its corresponding brief in support. As such, the court resolves this matter as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2023, Tucker was sentenced by the U.S. District Court for the Northern District of New York on charges of conspiracy to possess with intent to distribute a controlled substance, possession with intent to distribute a controlled substance, and possession of a firearm in furtherance of drug trafficking. Benimana Decl. Attach. 2 (ECF No. 13-1, at 7-8). Tucker's aggregated sentences resulted in a total term of 84 months. Id. at 8. Tucker has earned 135 days of good time credit and is projected to earn a total of 243 days of good time credit by the time of his scheduled release in February 2027. Id. at 9.

On May 10, 2024, Tucker received citations for possessing a hazardous tool in violation of BOP Offense Code 108, destroying and/or disposing of an item during a search in violation of BOP Offense Code 115, wearing a disguise or mask in violation of BOP Offense Code 207, possessing stolen property in violation of BOP Offense Code 226, interfering with staff in the performance of duties in violation of BOP Offense Code 298, and refusing to obey an order in violation of BOP Offense Code 307. Id. ¶ 7, Attach. 4 (ECF No. 13-1, at 2, 12-14). On May 15, 2024, Tucker was referred to the FBI for prosecution based on these charges. Id. ¶ 8, Attach. 5 (ECF No. 13-1, at 3, 16-17). However, the FBI declined to prosecute Tucker, and after notifying BOP, released the incident report to BOP on May 20, 2024. Id. ¶ 9, Attachs. 4 & 5 (ECF No. 13-1, at 3, 14-17). That same day, Tucker received a copy of the incident report.[3] Id. Attach. 4 (ECF No. 13-1, at 14). On May 22, 2024, Tucker appeared before the Unit Discipline Committee ("UDC"), which referred the matter to the Discipline Hearing Officer ("DHO") due to the severity of the violation. Id. at 13. Ahead of the disciplinary hearing with the DHO, Tucker received a

---

[3] Respondent notes that the incident report also states that Petitioner received a copy of the report on May 10, 2024, but because Tucker disputed receiving the report on that date, Respondent relies on May 20, 2024, as the date of receipt for the purposes of the Motion. Resp't's Mem. (ECF No. 13, at 4 n. 2) (citing Benimana Decl. Attach. 4 (ECF No. 31-1, at 14)).

2

notice informing him of his hearing before Petersburg's DHO, and an "Inmate Rights at Discipline Hearing" form advising him of his rights. Id. ¶ 11, Attach. 6 (ECF No. 13-1, at 3,18). Tucker waived his right to have a staff representative in writing, requested no witnesses, and presented no evidence. Id. ¶ 12, Attach. 7 (ECF No. 13-1, at 3, 19).

At the hearing before the DHO on May 28, 2024, Tucker acknowledged that he understood his rights. Id. Attach. 8 (ECF No 13-1, at 20). Tucker stated that he did not receive a copy of the incident report within 24 hours of the date and time that the reporting officer became aware of the incident. Id. The DHO then verbally informed Tucker that Program Statement 5270.09, Inmate Discipline Program, § 541.5(a) states:

> The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

Id. at 22 (citing 28 C.F.R. § 541.5(a)). However, the DHO further added that § 541.5(b) states:

> When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation. Staff may not question the inmate until FBI or other investigative agency releases the incident report for administrative processing. The time frame for processing the incident report is suspended until it is released for processing. If an incident is referred for prosecution, the incident report should then be delivered to the inmate by the end of the next business day after release for administrative processing. The five day time frame for UDC review starts when the incident report is released for administrative processing.

Id. (citing 28 C.F.R. § 541.5(b)). Furthermore, the DHO noted that the Incident Report History verified that the report was placed in a suspended status as a result of being referred to the FBI/AUSA to consider possible criminal prosecution. Id. The report was released by the FBI on May 20, 2024, and Sections 14, 15, and 16 of the Incident Report History show that it was given

3

to Tucker the same day. Id. Section 21 of the Incident Report History further indicates that UDC completed its review of the incident report on May 22, 2024. Id.

In addition, the DHO presented Tucker with photographs of the contraband—a white sock containing a black Samsung cellular telephone, charging cord, charging block (wall outlet adapter), and an inmate-made electrical cord fashioned from heavy gauge wiring. Id. at 23. Tucker responded to these photographs and Section 11 of the incident report with, "I'm pleading not guilty." Id. The DHO responded with specific questions regarding Tucker's behavior as documented in Section 11, which Tucker declined to answer, stating "with all due respect, I'm pleading not guilty to the incident report and I'm going to let it go at that. I don't want to say anything else because I'm planning on fighting this incident report on appeal." Id.

The DHO also considered the written eyewitness account of the reporting officer. This account indicates that on May 10, 2024, the officer was participating in a search of Lewisburg Satellite Prison Camp. Id. The officer stopped Tucker and ordered him to submit to a search, and Tucker "pulled his hands from his pockets and ran out of the Unit entrance doors, running towards the Camp Administration Building." Id. Despite several additional orders to stop, Tucker continued to flee, running around the back of the Camp Administration Building toward the Camp Residential Drug Abuse Program ("RDAP") Gym and the RDAP housing units. Id. As Tucker crossed over the roadway and jumped over a drainage ditch, the reporting officer directly observed Tucker throw a white object into the grass opposite of the drainage ditch. Id. The reporting officer secured the white-colored object and continued to pursue Tucker, who ran around the far side of the Camp RDAP Gym, before being intercepted by the officer. Id. While fleeing, Tucker had removed his glasses and knit cap, according to the statements, "in an effort to disguise his appearance to avoid apprehension by either the reporting officer or other responding staff." Id.

4

Upon inspecting the white object, the officer observed it was a white sock, containing a black Samsung brand smartphone, charging cord, charging block (wall outlet adapter), and inmate-made electrical cord for attaching the charging block to the LED lighting in the Camp housing units, constructed from heavy gauge wiring. Id.

Based on the weight of the evidence, including the eyewitness written account of the reporting officer and the photographs of the contraband, the DHO found that Tucker committed the prohibited acts of Possession of a Hazardous Tool (cellular phone), Interfering with Staff in the Performance of Duties Most Like Escape (Attempted) from Any Non-Secure Institution, and Refusing to Obey an Order, in violation of Codes 108, 198/102A, and 307. As relevant here, the DHO imposed: (1) disallowance of eighty-two days of good time credit; and (2) forfeiture of eighty-one days of non-vested good time credit. Id. at 25.

On December 5, 2024, Tucker filed a BOP administrative remedy request with the Petersburg Warden attempting to appeal his loss of good time credit. Pet. ¶ 7 (ECF No. 1, at 2). The Regional Director denied his appeal on February 27, 2025. Id. ¶ 8 (ECF No. 1, at 3). Petitioner submitted his final administrative appeal in March 2025, exhausting his administrative remedies. Id. ¶¶ 7-9 (ECF No. 1, at 2-3).[4] On September 10, 2025, Tucker filed a Petition for a writ of habeas corpus, arguing his Incident Report should be expunged and his good time credit should be restored because his discipline hearing process violated his due process rights. Pet. (ECF No. 1, at 6-8); Pet'r's Mem. (ECF No. 9, at 4-6). Respondent moved for Summary Judgment, (ECF No. 12), arguing the BOP complied with Petitioner's due process rights. Resp't's Mem. (ECF No. 13, at 11-18). The court provided the required notice to pro se plaintiffs under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (ECF No. 14). Tucker filed his response, arguing that the notice he

---

[4] Respondent does not contest Petitioner's exhaustion of his administrative remedies before filing this Petition.

5

received did not accurately describe the charges on which he was ultimately disciplined, (ECF No. 15), and Respondent replied (ECF No. 16). Tucker then filed a rebuttal which the court has also considered, (ECF No. 21).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself

6

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III.   ANALYSIS

**A.   Procedural Due Process and Good Time Credit**

To obtain habeas relief under § 2241, Petitioner must demonstrate that he is being detained in federal custody, "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Tucker alleges that the execution of his sentence violates the Constitution of the United States because the DHO's hearings process deprived him of his Fifth Amendment right to due process. See Pet'r's Mem. (ECF No. 9, at 3-6).

It is well established that a prisoner's earned good conduct time "is sufficiently embraced within [Fifth] Amendment 'liberty' to entitle [the prisoner] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Id. at 556. To the contrary, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. As the Supreme Court has explained:

> The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus, the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily. The interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Consequently, in identifying the safeguards required by due process, the Court has

7

> recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative remedies that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation.

Superintendent Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-55 (1985) (citations omitted).

Accordingly, the Due Process Clause requires that a prisoner subject to a loss of good time credit through disciplinary sanctions be afforded: (1) written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action. Wolff, 418 U.S. at 563-67; see also Crawley v. Wilson, No. 2:11-cv-542, 2012 WL 2505118, at *4 (E.D. Va. May 16, 2012). In addition, the findings of the prison disciplinary board must be "supported by some evidence in the record." Hill, 472 U.S. at 454. The BOP met each of these requirements in Tucker's case.

First, Tucker received written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing on the violations at issue here. On May 22, 2024, Tucker received notice of the hearing to be held on May 28, 2024. Benimana Decl. Attach. 6 (ECF No. 13-1, at 18). Tucker alleges that this notice was insufficient because it notified him that he was being charged under Code 115 for Destroying or Disposing of any Item During a Search, but he was ultimately found guilty of another charge—Interfering With a Staff Member Most Like Attempted Escape in violation of Codes 198/102A. Pet'r's Reply Resp't's Mot. Dismiss & Summ. J. ("Pet'r's Reply") (ECF No. 15, at 1-2); Pet'r's Rebuttal to Resp't's Reply Br. Supp. Mot. Summ. J. ("Pet'r's Rebuttal") (ECF No. 21, at 2). However, BOP has authority to amend charges in cases where, as here, a similar prohibited act is supported by the evidence described in an incident report.

8

See Santiago-Lugo v. Warden, 785 F.3d 467, 475-76 (11th Cir. 2015); Guerrero v. Recktenwald, 542 F. App'x 161, 164 (3d Cir. 2013); Lee v. Thompson, No. 4:22-cv-232, 2022 WL 1785251, at *4 (M.D. Pa. June 1, 2022); Boyd v. O'Brien, No. 7:08-cv-289, 2008 WL 2074073, at *7 (W.D. Va. 2008), aff'd, 301 F. App'x 292 (4th Cir. 2008). Tucker argues that unlike in other cases where the court has dismissed habeas petitions involving inmates alleging insufficient notice based on being charged with one thing and convicted of another, the offense he was charged with and the offense he was ultimately convicted of do not involve the same conduct. Pet'r's Rebuttal (ECF No. 21, at 3). His response to summary judgment states that the DHO narrative description of the facts "does not describe anything that could remotely be considered an attempted escape." Pet'r's Reply at 2. Therefore, Tucker argues, he could not have received sufficient notice to allow him to "marshal the facts in his defense and to clarify what the charges are, in fact." See Wolff v. McDonnell, 418 U.S. 539, 564 (1974). However, the BOP's determination that Petitioner violated Codes 198/102A was based on the same conduct described in the Incident Report. That report described Tucker failing to submit to a search, fleeing BOP staff despite multiple orders to stop, and leading staff on a foot chase across a roadway and drainage ditch. (ECF No. 13-1, at 22-23). Additionally, Tucker has not proffered or submitted any evidence that he alleges would have been submitted if he had known about the Code 198 /102A charge that would not have been equally relevant to the Code 115 charge indicated in the notice, and both codes fall within the same level of severity and are subject to the same sanctions. See Santiago-Lugo, 785 F.3d at 476 (dismissing a petition where the defendant charged with Code 108 and the DHO found he instead violated Code 199 because "[t]he only evidence he has suggested that he would have submitted if he had known he might be convicted of violating Code 199 is equally relevant to the Code 108 charge that was specified in the notice he did receive" and "both charges [are] 'Greatest Severity Level

9

Prohibited Acts'").[5]  Finally, the BOP's actions were consistent with its own regulations that permit it to find that an inmate "committed the prohibited act(s) charged, and/or similar prohibited act(s) as described in the incident report." 28 C.F.R. § 541.8(a)(1) (emphasis added).  Therefore, Tucker has failed to show that the notice provided by BOP was insufficient.

Second, the DHO was a neutral and detached hearing body—Tucker has offered no evidence indicating otherwise.  Third, Tucker received the opportunity to call witnesses and present documentary evidence, but chose not to do so.  See Benimana Decl. Attach. 7 (ECF No. 13-1, at 19).  Fourth, Tucker had an opportunity for non-attorney representation, but waived his right to a staff representative.  See id.  Finally, Tucker received written statements from the fact-finding DHO outlining the evidence relied upon and the reasons for the chosen course of disciplinary action.  See id. Attach. 8 (ECF No. 13-1, at 20-32).  The eyewitness written account and photographs in the incident report support the DHO's finding that Tucker in fact violated the BOP Offense Code by running from BOP officers while carrying contraband, trying to dispose of that contraband, and disguising himself to evade capture by changing his appearance.  Id.  In sum, Tucker was afforded the due process rights guaranteed under the Constitution prior to deprivation of his liberty interest in good time credit.  See Wolff, 418 U.S. at 563-67.

**B.    Evidentiary Challenge**

Tucker's evidentiary challenge also fails.  Tucker challenges the sufficiency of the evidence supporting his disciplinary infractions, arguing that "the narrative contained in the incident report does not describe anything that could reasonably be considered an attempted

---

[5] Petitioner relies on Santiago and Fogg v. Smith, 2019 WL 3561519, at *3-5 (E.D.N.C. 2019), but neither case supports his claim. Both cases rejected due process violations claims made when a petitioner was found guilty under an offense code different than the code violation in the incident report because the violations stemmed from the same conduct. Similarly, Petitioner was found guilty under a charge different from the Incident Report in this case, but his offenses were also based on the same conduct.

escape." Pet'r's Reply (ECF No. 15, at 2). He argues that the incident report shows only that "an inmate [was] running around the prison grounds in an attempt to ditch contraband and avoid apprehension." Id. However, for its decision to satisfy the Due Process Clause, the BOP need only have "some evidence" supporting its findings, and those findings need only have "some basis in fact." Superintendent Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 465 (1985). The decision must be upheld when there is "any evidence in the record that could support the conclusion reached by the [decision maker]." Id. Here, the BOP satisfied this requirement. The evidence DHO considered at the hearing established that Tucker: did not submit to a pat search by BOP staff; fled from BOP staff despite several direct orders to stop; led BOP staff on a foot chase throughout his correctional facility, across a roadway, and over a drainage ditch; changed his appearance by removing his knit cap and glasses; and attempted to discard several pieces of contraband on his person, including a cell phone, charging block, and charging cord. See Benimana Decl. Attach. 8 (ECF No. 13-1, at 22-24). This was more than sufficient to constitute "some evidence" and satisfy its obligations under the Due Process Clause.

Based on the record outlined above, Respondent has "show[n] that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The record, taken as a whole, does not provide a sufficient basis on which a rational factfinder could find for Petitioner. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The facts demonstrate that Respondent is entitled to judgment because BOP did not violate Tucker's constitutional rights. Tucker's § 2241 petition is without merit.

11

## IV.    CONCLUSION

For the foregoing reasons, Respondent's Motion for Summary Judgment, (ECF No. 12), is GRANTED, and the Petition, (ECF No. 1), is DISMISSED, with prejudice.[6]

**If Petitioner intends to appeal this Final Order, he must within sixty (60) days from the date of this Order, file a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Frayer v. Warden, FCI Beckley, No. 23-6054, 2023 WL 3268719, at \*1 (4th Cir. May 5, 2023) ("When the United States or its officer or agency is a party in a civil case, the notice of appeal must be filed no more than 60 days after the entry of the district court's final judgment or order.").**

IT IS SO ORDERED.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E.  MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
April 9, 2026

---

[6] Tucker also filed a motion to expedite (ECF No. 10), and the clerk is directed to TERMINATE that motion as MOOT.

12

## Clerk's Mailing Certificate

A copy of the foregoing was mailed this date to:

**Doron Tucker**
13609-509
FCC Petersburg-Low
P.O. Box 1000
Petersburg, VA 23804

and an electronic copy was provided to:

**Daniel Patrick Shean**
U.S. Attorney's Office (Norfolk)
101 W. Main Street, Suite 8000
Norfolk, VA 23150

Fernando Galindo, Clerk

By ___V.Pearson___
        Deputy Clerk

_____April 9_____, 2026

13